**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BX LED LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| SENGLED OPTOELECTRONICS CO., LTD, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BX LED LLC ("BX" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendant Sengled Optoelectronics Co., Ltd ("Sengled" or "Defendant"), and alleges as follows:

## SUMMARY

1.      Plaintiff is the owner by assignment of all right, title and interest in United States United States Patent Nos. 6,869,812; 9,913,333; 8,203,260; 10,966,300; and 8,998,433 (collectively, the "Patents-in-Suit").

2.      Defendant infringes the Patents-in-Suit at least by selling, without authorization, Plaintiff's proprietary technologies in a number of their commercial products including, *inter alia*, the Sengled Smart Filament Bulb, Sengled Smart Candle Bulb, Sengled Smart LED Start Kit, the Sengled Smart A19 Multicolor Bulb, Sengled Par38 Motion Sensor Bulb, Sengled BR30 Smart Daylight Bulb, Sengled Smart A19 Bluetooth Mesh, Sengled Smart A19 Classic Daylight Bulb, and other substantially similar products (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this

District.

3.     By this action, Plaintiff seeks to obtain compensation for the harm Plaintiff has suffered, and will continue to suffer, as a result of Defendant infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.     Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of Plaintiff's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6.     Plaintiff is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Plaintiff seeks monetary damages for Defendants' infringement of the Patents-in-Suit.

## THE PARTIES

7.     Plaintiff BX LED LLC is a Texas limited liability company with its principal place of business at 17330 Preston Road, Suite 200D, Dallas, Texas 75252. Plaintiff is the owner of the intellectual property rights at issue in this action.

8.     On information and belief, Defendant Sengled Optoelectronics Co., Ltd is a Chinese corporation with its principal place of business at No. 39, Shenghui Road, Xiuzhou Industry Zone, Jiaxing, Zhejiang, 314031, China, and may be served with process by serving it directly at its headquarters in China or via substituted service.

9.     On information and belief, Defendant, through its online store, directly and/or

indirectly distributes, markets, offers to sell, and/or sells the Accused Products in the United States and/or import the Accused Products into the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with the Accused Products.

## JURISDICTION AND VENUE

10.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendant because Defendant has (i) availed themselves of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as marketing, shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), as Defendant is not a resident of the United States and the sales, offers to sell, and importation of the Accused products giving rise to the claim of patent infringement have occurred in this District.

**PATENTS-IN-SUIT**

**U.S. Patent No. 6,869,812**

13.     U.S. Patent No. 6,869,812 (the "'812 Patent") is titled "High power AllnGaN based multichip light emitting diode" and was issued on March 22, 2005. A true and correct copy of the '812 Patent is attached as Exhibit A.

14.     The '812 Patent was filed on May 13, 2003 as U.S. Patent Application No. 10/438,108.

15.     Plaintiff is the owner of all rights, title, and interest in and to the '812 Patent, with the full and exclusive right to bring suit to enforce the '812 Patent, including the right to recover for past infringement.

16.     The '812 Patent is valid and enforceable under United States Patent Laws.

17.     The '812 Patent recognized problems with existing light emitting diodes at the time of the invention of the '812 Patent.

18.     For instance, the inventors of the '812 Patent recognized that prior art light emitting diodes had issues of insufficient illumination and poor efficiency, limiting their ability "to function in some applications, such as providing general illumination, *e.g.*, ambient lighting." '812 Patent at 1:24-31. Prior attempts to address these issues involved the use of multiple LEDs and/or larger device sizes. *See id*. at 1:38-45, 2:16-18.

19.     The use of larger device sizes introduced other impediments towards efficiency, *e.g.*, lower light extraction efficiency relative to smaller devices. *See id*. at 2:61-65. Light extraction efficiency refers to the issue that when light is generated in an LED, some light fails to escape the device, because "as the device size increases, light has a tendency to bounce more and thus travel a longer distance before exiting the device, resulting in increased light loss," whereas "light tends to bounce fewer times in a smaller device and thus travels a shorter distance." *See id*.

at 3:12-16.

20.     The inventors of the '812 Patent recognized that it was "desirable to minimize the number of bounces and the total travel distance before light can escape for any light transmissive layer of an LED." *See id*. at 3:9-11.

21.     In view of the foregoing, among other advantages over the prior art, the inventions claimed by the '812 Patent provide the benefits of "superior light output efficiency" over the prior art by way of an active surface with elongated geometry. *See id*. at 11:46-48. With elongated geometry, "light can easily escape from the long dimension side, thus substantially enhancing the brightness of the device. The elongated configuration of the LED chip also enhances heat dissipation, thus allowing the device to be operated at higher current levels to facility further enhancement of the light output thereof, as well as for improvement of the efficiency thereof." *See id*. at 8:62-9:3.

## U.S. Patent No. 8,203,260

22.     U.S. Patent No. 8,203,260 (the "'260 Patent") is titled "Color temperature tunable white light source" and was issued on June 19, 2012. A true and correct copy of the '260 Patent is attached as Exhibit B. The '260 Patent was filed on April 13, 2007 as U.S. Patent Application No. 11/787,107.

23.     Plaintiff is the owner of all rights, title, and interest in and to the '260 Patent, with the full and exclusive right to bring suit to enforce the '260 Patent, including the right to recover for past infringement.

24.     The '260 Patent is valid and enforceable under United States Patent Laws. The '260 Patent recognized problems with existing light emitting devices at the time of the invention of the '260 Patent.

25.     For instance, the '260 Patent describes apparatuses, absent in the prior art, which

provide a tunable white light source. *See*, *e.g.*, '260 Patent at 2:15-17. The '260 Patent recognized that traditional white light sources emitted white light at a relatively fixed color temperature, such as "warm white light" having a color temperature of approximately 3000 Kelvin (K), in the case of incandescent lighting, and "cold white light" having a color temperature of approximately 7000K, in the case of fluorescent lighting. *See id*. at 1:20-24. At the time of the '260 Patent, white LED lighting was a relatively recent innovation and had similar limitations to traditional white light sources. *Id*. at 1:13:29.

26.     The '260 Patent recognizes that the prior art comprised systems and methods wherein LED white light was generated within a predetermined portion of the visible spectrum, for example, 400nm-700nm wavelength range, and using a significant number (e.g., "three hundred LEDs each of which has a narrow spectral width," in one example) of LEDs to achieve any tunability within that spectrum. *See id*. at 1:55-65. Considering the narrow visibility spectrum of white light produced by these sources, the unwieldy number of LEDs required to provide tunability, and/or the need for cumbersome filters to obtain tunability, there was a need in the prior art for methods and devices that provided sources of white light that were tunable across the color temperature and visible spectrum with a minimal number of LED arrays. In addition, there was particular need to further increase the operating life and lower the power consumption of lighting devices, including LED lighting. *See*, *e.g*., *id*. at 1:46-49; 2:61-64.

27.     The inventions claimed by '260 Patent address these limitations by describing an apparatus with two LED arrangements wherein the first LED arrangement emits light of a first wavelength range, and the second emits light of a second wavelength range such the combination of the two appears white. *See*, *e.g*., *id*. at 2:21-28. The first and second LED arrangements also contained respective means for controlling their relative outputs. *See*, *e.g*., *id*. For example, in one described embodiment, the color temperature of the two LEDs could be tuned by controlling the

relative magnitude of the drive currents of the LEDs using, for example, a potential divider arrangement. *See id*. at 2:50-52.

28.     The inventors of the '260 Patent recognized a number of advantages of the claimed inventions over the prior art, including wide application in a variety of commercial and domestic lighting applications, without the necessity to manufacture different lights of various static, or highly limited, color temperatures and visibility spectrum output for different applications. *See*, *e.g.*, *id*. at 8:51-53. The invention is also particularly advantageous in applications where visibility may be impaired with changing environmental conditions such as fog, dust, or smoke, such that the LED lighting can be tuned to the level of optimal visibility. *See*, *e.g.*, *id*. at 3:49-53; 8:53-56. The invention further has the advantage of minimizing the number of LED arrangements necessary to achieve tunability across a broad color temperature spectrum, thus improving efficiency in power consumption and reducing manufacturing cost. *See*, *e.g.*, *id*. at 2:61-65.

## U.S. Patent No. 10,966,300

29.     U.S. Patent No. 10,966,300 (the "'300 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 30, 2021. A true and correct copy of the '300 Patent is attached as Exhibit C.

30.     The '300 Patent was filed on June 21, 2019 as U.S. Patent Application Serial No. 16/449,220 and has a priority date of February 26, 2009.

31.     Plaintiff is the owner of all rights, title, and interest in and to the '300 Patent, with the full and exclusive right to bring suit to enforce the '300 Patent, including the right to recover for past infringement.

32.     The '300 Patent is valid and enforceable under United States Patent Laws.

33.     The '300 Patent recognized and provided solutions to problems arising with LEDs'

replacement of conventional light emitting devices such as incandescent and fluorescent lights. '300 Patent at 1:26-32.

34.     For instance, the '300 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '300 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:41-61. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." *Id.* at 1:62-2:8. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with connecting the LEDs in a series-type connection or by making larger LEDs. *Id.* at 2:9-3:31.

35.     The inventors of the '300 Patent addressed these limitations by utilizing "a single LED die that is divided into N segments that are serially connected to one another." *Id.* at 4:29-42. In this respect, the '300 Patent comprises, in one embodiment, a plurality of segmented LEDs connected in parallel between two power rails where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-45; 10:64-11:5; abstract.

36.     In view of the foregoing limitations of the prior art, the inventions claimed in the '300 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operates from a significantly higher potential than conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." *See, e.g., id.* at 7:37-43.

**U.S. Patent No. 9,913,333**

37.     U.S. Patent No. 9,913,333 (the "'333 Patent") is titled "Light sources utilizing segmented LEDs to compensate for manufacturing variations in the light output of individual segmented LEDs" and was issued on March 6, 2018. A true and correct copy of the '333 Patent is attached as Exhibit D.

38.     The '333 Patent was filed on March 20, 2017 as U.S. Patent Application Serial No. 15/464,200 and has a priority date of February 26, 2009.

39.     Plaintiff is the owner of all rights, title, and interest in and to the '333 Patent, with the full and exclusive right to bring suit to enforce the '333 Patent, including the right to recover for past infringement.

40.     The '333 Patent is valid and enforceable under United States Patent Laws.

41.     The '333 Patent recognized and provided solutions to problems arising with LEDs' replacement of conventional light emitting devices such s incandescent and fluorescent lights. '333 Patent at 1:30-36.

42.     For instance, the '333 Patent recognized that the dissipation of heat due to the conversion efficiency of the LEDs places a limit on the power level at which an LED operates. The '333 Patent also recognized that, due to the increased current running through the LED, higher light output of the LEDs would lead to a decrease in conversion efficiency as well as an overall decrease in the lifetime of the LED. *Id.* at 1:45-65. A light source with a typical single LED does not produce sufficient light for most applications and, in general, "there is a limit to the light per unit area of LED that can be practically generated at an acceptable power conversion efficiency." *Id.* at 1:65-3:40. In this respect, LED light sources have been designed to use multiple LEDs wired in parallel to avoid numerous cost disadvantages and increased failure rates associated with connection the LEDs in a series-type connection or by making larger LEDs. *Id.* at 1:66-3:12.

43.     The inventors of the '333 Patent addressed these limitations by utilizing "a single LED die that is divided into N segments that are serially connected to one another." *Id.* at 4:29-42. In this respect, the '333 Patent comprises, in one embodiment, "a plurality of segmented LEDs connected in parallel to a power bus" where the segmented LEDs are serially connected in segments having equal area thus providing an improved, less expensive, and longer-lasting light emitting device. *Id.* at 4:29-455; 10:64-11:5; abstract.

44.     In view of the foregoing limitations of the prior art, the inventions claimed in the '333 Patent provide improved overall efficiency and life of the light source and "the ability to provide a light source that operated from a significantly higher potential that conventional LEDs while breaking up the light source into sufficient component light sources to compensate for the variability in light generation between the various component light sources." *See, e.g., id.* at 5:60:6:11; 6:59-7:5; 7:43-49.

**U.S. Patent No. 8,998,433**

45.     U.S. Patent No. 8,998,433 (the "'433 Patent") is titled "Light emitting device utilizing remote wavelength conversion with improved color characteristics" and was issued on April 7, 2015. A true and correct copy of the '433 Patent is attached as Exhibit E.

46.     The '433 Patent was filed on October 13, 2011 as U.S. Patent Application Serial No. 13/273,208 and has an earliest priority date of March 8, 2006.

47.     Plaintiff is the owner of all rights, title, and interest in and to the '433 Patent, with the full and exclusive right to bring suit to enforce the '433 Patent, including the right to recover for past infringement.

48.     The '433 Patent is valid and enforceable under United States Patent Laws.

49.     The '433 Patent recognized and provided solutions to problems with existing light emitting devices of the time of the inventions claimed in the '433 Patent. '433 Patent at 1:19-22.

50.     For instance, the inventors of the '433 Patent recognized that certain commercial and entertainment lighting applications may need light to be emitted with high color saturation for optimal presentation. *Id.* at 1:26-30. To that end, typically high color saturation would be generated by applying a narrow selective filter to an incandescent white light source (a source which comprises a combination of light with different wavelengths in the visible spectrum). *Id.* at 1:30-35. The narrow selective filter would filter the white light to provide the desired saturated color light emission, however, this was an inefficient system that "wastes a significant portion of the light generated by the light source, as a significant portion is absorbed by the selective filter rather than being transmitted." *Id.* at 1:35-41.

51.     At the time of the claimed inventions, LED (light emitting diode) light sources that produced white light were a relatively recent innovation whose practical use was brought about by the development of LEDs emitting the blue/ultraviolet of the electromagnetic spectrum. *Id.* at 1:42-46. Such light generating LEDs would include photo-luminescent materials to absorb a portion of the blue light emitted by the LED and re-emit light in a range of wavelengths (red, green, or yellow) which could combine to produce light appearing to be white or other colors in the visible spectrum. *Id.* at 1:46-60. While this method improved efficiency, it typically resulted in the disadvantage of lower color saturation by producing "a much broader emission curve than desired." *Id.* at 1:61-2:5. Along with this disadvantage, this method could require the use of layers of photo-luminescent materials that were undesirably thick. *Id.* at 3:40-46.

52.     The inventors of the '433 Patent realized that if the color enhancement layer is placed in the path between the photo-luminescent layer and the final emission path, the color enhancement/filter layer serves to greatly improve the color saturation quality of the final emission product. *Id.* Advantageously, in this configuration, "undesirable wavelengths of the emission product of the layer of photo-luminescent material may be filtered such that a final emission

product established by the wavelength conversion component is highly saturated." *Id.* at 14:50-59.
In this respect, the '433 Patent discloses a light emitting device that improves color saturation by,
in one embodiment, utilizing remote wavelength conversion including "a color enhancement
layer" that "functions as a filter that narrows the light emission spectrum of the final emission
product from the lighting apparatus." *Id.* at 3:47-57.

53.     In view of the foregoing, the invention described and claimed in the '433 Patent
provides, inter alia, improved color characteristics over the prior art including improved efficiency
and improved color saturation. *See, e.g., id.* at 14:50-59.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,869,812

54.     Plaintiff incorporates by reference and re-alleges paragraphs 1-53 of the Complaint
as if fully set forth herein.

55.     Defendant has infringed and is infringing, either literally or under the doctrine of
equivalents, the '812 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by
making, using, offering for sale, and/or selling in the United States, and/or importing into the
United States without authority or license products, including but not limited to the Sengled Smart
Candle Bulb, Sengled Smart LED Start Kit, the Sengled Smart A19 Multicolor Bulb, Sengled
Par38 Motion Sensor Bulb, Sengled BR30 Smart Daylight Bulb, Sengled Smart A19 Bluetooth
Mesh, Sengled Smart A19 Classic Daylight Bulb, and other substantially similar products
(collectively, the "'812 Accused Products").

56.     By way of non-limiting example(s), set forth below (with claim language in bold
and italics) is exemplary evidence of infringement of claim 1 of the '812 Patent by the '812
Accused Products. This description is based on publicly available information. Plaintiff reserves
the right to modify this description, including, for example, on the basis of information about the
'812 Accused Products that it obtains during discovery.

57.     *1(a): A light emitting diode chip comprising*:— The Sengled Smart A19 Classic Daylight Bulb, Sengled Par38 Motion Sensor Bulb, and Sengled Smart A19 Bluetooth Mesh each comprise a "light emitting diode chip," as recited in claim 1:

*Sengled Smart A19 Classic Daylight Bulb*

        

Product Page              LED Package              LED Chip

*Sengled Par38 Motion Sensor Bulb*

        

Product Page              LED Package              LED Chip

*Sengled Smart A19 Bluetooth Mesh*

        

Product Page              LED Package              LED Chip

58.     ***1(b): a substantially transparent substrate;***— The Sengled Smart A19 Classic Daylight Bulb, Sengled Par38 Motion Sensor Bulb, and Sengled Smart A19 Bluetooth Mesh each comprise a "substantially transparent substrate," as seen in the below images where the transparent substrate is annotated in red:



*Sengled Smart A19 Classic Daylight Bulb*



*Sengled Par38 Motion Sensor Bulb*



*Sengled Smart A19 Bluetooth Mesh*

59.   ***1(c): An active region formed upon the substrate; and;—*** The Sengled Smart A19 Classic Daylight Bulb, Sengled Par38 Motion Sensor Bulb, and Sengled Smart A19 Bluetooth Mesh each comprise an "active region formed upon the substrate," as seen in the below images:



*Sengled Smart A19 Classic Daylight Bulb*



*Sengled Par38 Motion Sensor Bulb*



*Sengled Smart A19 Bluetooth Mesh*

60.    ***1(d): Wherein an aspect ratio of the active area is greater than approximately 1.5 to 1.***— The Sengled Smart A19 Classic Daylight Bulb, Sengled Par38 Motion Sensor Bulb, and Sengled Smart A19 Bluetooth Mesh each comprise an active region wherein the aspect ratio is greater than approximately 1.5 to 1.

*Sengled Smart A19 Classic Daylight Bulb*



*Sengled Par38 Motion Sensor Bulb*



*Sengled Smart A19 Bluetooth Mesh*



The aspect ratios of the active region of the light emitting diode chip in the Sengled Smart A19 Classic Daylight Bulb, Sengled Par38 Motion Sensor Bulb, and Sengled Smart A19 Bluetooth Mesh are all greater than 1.5 to 1. Specifically, the aspect ratios, as derived from the pixel (px) measurements taken from above images, are:

|  | L1 (long side) | L2 | Aspect Ratio (L1/L2) |
|---|---|---|---|
| Sengled Smart A19 Classic Daylight Bulb | 2565.59 | 1100.18 | 2.332 |
| Sengled Par38 Motion Sensor Bulb | 3020.00 | 1020.01 | 2.960 |
| Sengled Smart A19 Bluetooth Mesh | 2355.90 | 916.37 | 2.570 |

61.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '812 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '812 Patent under 35 U.S.C. § 271(c).

62.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '812 Patent while being on notice of (or willfully blind to) the '812 Patent. For instance, Defendant has supplied and continues to supply the '812 Accused Products to customers (e.g., end users and/or distributors of the '812 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '812 Patent.

63.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '812 Patent. As one example, Defendant promotes, advertises and instructs customers or potential customers about the '812 Accused Products and uses of the '812 Accused Products. *See*, *e.g.*, https://www.amazon.com/Sengled-Assistant-Daylight-Required-Equivalent/dp/B091GCJ4RT; https://ca.sengled.com/products/sengled-smart-led-with-motion-sensor-par38-bulb; https://us.sengled.com/products/bluetooth-mesh-color-a19-e26.

64.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '812 Patent. For instance, Defendant knows (and/or has known) of the existence of the '812 Patent or at least should have known of the existence of the '812 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '812 Patent since at least as early as September 13, 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of its knowledge of the '812 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '812 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '812 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '812 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

65.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '812 Patent by offering for sale, selling, and/or importing one or more components in connection with the '812 Accused Products that contribute to the direct infringement of the '812 Patent by customers of the '812 Accused Products. As set forth above,

Defendant has had actual knowledge of the '812 Patent or is willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '812 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '812 Patent. Defendant has supplied (and/or continues to supply) the '812 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '812 Patent by using the '812 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

66.     At least as early as when Defendant received Plaintiff's Notice Letter, Defendant's infringement of the '812 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

67.     Additional allegations regarding Defendant's knowledge of the '812 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

68.     Defendant's infringement of the '812 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

69.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '812 Patent.

70.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '812 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,203,260

71.     Plaintiff incorporates by reference and re-alleges 1-70 of the Complaint as if fully

set forth herein.

72.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '260 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Sengled BR30 Smart Bulb and Sengled Smart A19 Bluetooth Mesh, among other substantially similar products (collectively, the "'260 Accused Products").

73.     As non-limiting examples, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '260 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '260 Accused Products that it obtains during discovery.

74.     ***1(a): A color temperature tunable white light source, the source comprising:***—The '260 Accused Products are color temperature tunable white light sources, as seen below:



75.     ***1(b): an array of first LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K and;***—The white light sources of the '260 Accused Products comprise an array of first LED arrangements operable to emit white

light with a color correlated temperature (CCT) in a range of 2500 K to 4000 K.



*Sengled BR30 Smart Bulb*




*Sengled Smart A19 Bluetooth Mesh*

76.     ***1(c): second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K–*** The white light sources of the '260 Accused Products comprise second LED arrangements operable to emit white light with a color correlated temperature (CCT) in a range of 6000 K to 10,000 K.



*Sengled BR30 Smart Bulb*



*Sengled Smart A19 Bluetooth Mesh*

77.     ***1(d): wherein the LED arrangements are configured such that a composite light is emitted by the array;—*** The LED arrangements of the '260 Accused Products are configured to emit a composite light. For example, as seen in the images for limitation 1(a), the LED arrangements are tunable and placed next to each other so that the Warm White LED arrangement and the Cool White LED arrangement emit a composite light (e.g. a uniform white color temperature).

78.     ***1(e): wherein the relative drive currents of the first and second LED arrangements are controllable, and thus variable in relative magnitude, such that the color correlated temperature of the composite light emitted by the array is electrically tunable***—As seen from the above juxtapositions of the LED arrangements and mobile application screenshots in limitations 1(b) and 1(c), the color correlated temperature of the composite light emitted by the array is electrically tunable and such tuning is accomplished by way of controlling the relative

drive currents and thus relative magnitudes of the first and second LED arrangements.

79.     Additionally, Defendant has been and/or currently is an active inducer of infringement of the '260 Patent under 35 U.S.C. § 271(b) and contributory infringers of the '260 Patent under 35 U.S.C. § 271(c).

80.     Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '260 Patent while being on notice of (or willfully blind to) the '260 Patent. For instance, Defendant has supplied and continues to supply the '260 Accused Products to customers (e.g., end users and/or distributors of the '260 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '260 Patent.

81.     Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '260 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '260 Accused Products and uses of the '260 Accused Products. *See, e.g.*, https://us.sengled.com/products/zigbee-color-br30-e26-hub-required; https://us.sengled.com/products/wi-fi-color-a19-e26-1.

82.     Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '260 Patent. For instance, Defendant knows (and/or has known) of the existence of the '260 Patent or at least should have known of the existence of the '260 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '260 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of its knowledge of the '260 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct

infringement of the '260 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '260 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '260 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

83.     Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '260 Patent by offering for sale, selling, and/or importing one or more components in connection with the '260 Accused Products that contribute to the direct infringement of the '260 Patent by customers of the '260 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '260 Patent or is willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '260 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '260 Patent. Defendant has supplied (and/or continues to supply) the '260 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '260 Patent by using the '260 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

84.     On information and belief, at least as early as the filing and/or service of this Complaint, Defendant's infringement of the '260 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

85.     Additional allegations regarding Defendant's knowledge of the '260 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

86.     Defendant's infringement of the '260 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87.     Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '260 Patent.

88.     Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '260 Patent, including, without limitation, a reasonable royalty.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,913,333**

89.     Plaintiff incorporates by reference and re-alleges paragraphs 1-88 of the Complaint as if fully set forth herein.

90.     Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '333 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Sengled Smart LED Starter Kit and Sengled BR30 Multicolor Smart Bulb among other substantially similar products (collectively, the "'333 Accused Products").

91.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '333 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '333 Accused Products that it obtains during discovery.

92.     ***1(a): A light source comprising comprising:***—The Sengled Smart LED Starter Kit comprises a light source:



*Sengled Smart LED Starter Kit*

93.     ***1(b): a plurality of segmented light emitting diodes (LEDs) connected in parallel:***—The Sengled Smart LED Starter Kit comprises a plurality of segmented LEDs connected in parallel, as seen in the annotated images below:



*Sengled Smart LED Starter Kit*

94.     ***1(c): wherein each segmented LED is an LED die divided into N segments that are each equal in area and form individual LEDs serially connected to one another, and wherein N is an integer that is greater than 1; and***;—This limitation is met by the segmented LEDs as seen in the annotated images below:



*Sengled Smart LED Starter Kit*

95.     ***1(d): a controller that receives AC power and provides a power signal on said power bus.***— The Sengled Smart LED Starter Kit comprises a controller that receives AC power and provides a power signal on said power bus. For example, the controller (illustrated in below image) receives AC power and sends a control signal based on said AC power.



*Sengled Smart LED Start Kit*

96.     Additionally, Defendant has been and/or currently is an active inducer of infringement of the '333 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '333 Patent under 35 U.S.C. § 271(c).

97.     Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or

encouraging customers to directly infringe one or more claims of the '333 Patent while being on notice of (or willfully blind to) the '333 Patent. For instance, Defendant has supplied and continues to supply the '333 Accused Products to customers (e.g., end users and/or distributors of the '333 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '333 Patent.

98.     Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '333 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '333 Accused Products and uses of the '333 Accused Products. *See, e.g.*, https://us.sengled.com/products/starter-kit-2-zigbee-white-2700k-a19-e26;

99.     Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in its customers directly infringing the '333 Patent. For instance, Defendant knows (and/or has known) of the existence of the '333 Patent or at least should have known of the existence of the '333 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '333 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of its knowledge of the '333 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '333 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '333 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '333 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

100.     Additionally, Defendant has been and/or currently is contributorily infringing one

or more claims of the '333 Patent by offering for sale, selling, and/or importing one or more components in connection with the '333 Accused Products that contribute to the direct infringement of the '333 Patent by customers of the '333 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '333 Patent or was willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '333 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '333 Patent. Defendant has supplied (and/or continues to supply) the '333 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '333 Patent by using the '333 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

101.   At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '333 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

102.   Additional allegations regarding Defendant's knowledge of the '333 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

103.   Defendant's infringement of the '333 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

104.   Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '333 Patent.

105.   Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '333 Patent, including, without limitation,

a reasonable royalty.

### <u>COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,966,300</u>

106.    Plaintiff incorporates by reference and re-alleges paragraphs 1-105 of the Complaint as if fully set forth herein.

107.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '300 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Sengled Smart LED Starter Kit and Sengled BR30 Smart Multicolor Bulb, among other substantially similar products (collectively, the "'300 Accused Products").

108.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '300 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '300 Accused Products that it obtains during discovery.

109.    ***1(a): A light source comprising:***—The Sengled Smart LED Starter Kit comprises a light source.



*Sengled Smart LED Starter Kit*

110.    ***1(b): a substrate having first and second power rails; and***—The Sengled Smart LED Starter Kit comprises a substrate having first and second power rails, as seen in the annotated

images below:



*Sengled Smart LED Starter Kit*

111.    ***1(c): a plurality of segmented LEDs connected between the first and second power rails***—The Sengled Smart LED Starter Kit comprises a plurality of segmented LEDs connected between the first and second power rails as seen in the annotated images below:



*Sengled Smart LED Starter Kit*

112.    ***1(d): wherein each segmented LED is configured to generate light when a power signal is applied to the first and second power rails***—In the Sengled Smart LED Starter Kit, each segmented LED is configured to generate light when a power signal is applied to the first and second power rails.

113.    *1(e): wherein the plurality of segmented LEDs are provided by a single LED die that is divided into N segments serially connected to each other, with N being ≥1, and*—The plurality of segmented LEDs are provided by a single LED die that is divided into 3 segments serially connected to each other.



*Sengled Smart LED Starter Kit*

114.    *1(f): wherein each segmented LED comprises a size that is 1/N times a size of a single junction LED fabricated in the same material as the segmented LED.*—Each segmented LED is 1/3 the size of a single junction LED fabricated in the same material as the segmented LED.



*Sengled Smart LED Starter Kit*

115.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '300 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '300 Patent under 35 U.S.C. § 271(c). Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '300 Patent while being on notice of (or willfully blind to) the '300 Patent. For instance, Defendant has supplied and continues to supply the '300 Accused Products to customers (e.g., end users and/or distributors of the '300 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '300 Patent.

116.    Defendant has been and/or currently is knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '300 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '300 Accused Products and uses of the '300 Accused Products. *See*, *e.g.*, https://us.sengled.com/products/starter-kit-2-zigbee-white-2700k-a19-e26.

117.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '300 Patent. For instance, Defendant knows (and/or has known) of the existence of the '300 Patent or at least should have known of the existence of the '300 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '300 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of its knowledge of the '300 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '300 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct

infringement of one or more claims of the '300 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '300 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

118.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '300 Patent by offering for sale, selling, and/or importing one or more components in connection with the '300 Accused Products that contribute to the direct infringement of the '300 Patent by customers of the '300 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '300 Patent or is willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in connection with the '300 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '300 Patent. Defendant has supplied (and/or continues to supply) the '300 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '300 Patent by using the '300 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

119.    On information and belief, at least as early as the filing and/or service of this Complaint, Defendant's infringement of the '300 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

120.    Additional allegations regarding Defendant's knowledge of the '300 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

121.    Defendant's infringement of the '300 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

122.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '300 Patent.

123.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '300 Patent, including, without limitation, a reasonable royalty.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,998,433**

124.    Plaintiff incorporates by reference and re-alleges paragraphs 1-123 of the Complaint as if fully set forth herein.

125.    Defendant has infringed and is infringing, either literally or under the doctrine equivalents, the '433 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, products, including but not limited to the Sengled Filament LED Bulb, among other substantially similar products (collectively, the "'433 Accused Products").

126.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claims 1 of the '433 Patent. This description is based on publicly available information. Plaintiff reserves the right to modify this description, including, for example, on the basis of information about the '433 Accused Products that it obtains during discovery.

127.    **1(a): A light emitting device configured to emit light of a selected color having a selected peak wavelength, comprising:**—The Sengled Filament LED Bulb comprises a light emitting device configured to emit light of a selected color having a selected peak wavelength, i.e., an amber light having a selected peak wavelength, as seen in the below measurement of its emitted light's wavelength.



*Sengled Filament LED Bulb*

128.    ***1(b): a radiation source operable to generate and radiate excitation energy, the source being configured to irradiate a wavelength conversion component with excitation energy;***—The Sengled Filament LED Bulb comprises a radiation source (e.g. LEDs) operable to generate and radiate excitation energy (e.g. light), the source being configured to irradiate a wavelength conversion component (e.g. Phosphor) with a excitation energy. For example, the filament bulb, comprises LEDs to generate light and irradiate the phosphor covering said LEDs, as seen in the below image:



*Sengled Filament LED Bulb*

129.    ***1(c): the wavelength conversion component comprising: a layer comprising a photo-luminescent material which, when irradiated by the radiation source, emits light of a first wavelength range having a single peak wavelength corresponding to the selected peak wavelength;***—The wavelength conversion component comprises a layer of photo luminescent material (e.g. Phosphor material), which emits a light of a first wavelength range having a single peak wavelength corresponding to the selected peak wavelength. The selected peak wavelength is approximately 630nm. The following measurement corresponds to the measurement of the light emitted from the LED filament *without* the glass amber filter:



*Sengled Filament LED Bulb*

130.    **1(d): a color enhancement filter layer to filter wavelengths of light outside of a second range, wherein the second wavelength range in narrower than the first wavelength range and centered on the selected peak wavelength**—The EcoSmart Amber Filament LED Bulb comprises a color enhancement filter layer (e.g., the amber glass) to filter wavelengths outside of a second range. The second wavelength range is narrower than the first wavelength range and centered on the selected peak wavelength. The measurement of the first wavelength range of the LED bulb (without the amber glass) is presented above in limitation 1(c). The measurement of the

second wavelength range of the LED bulb (with the amber glass) is below for comparison:



*Sengled Filament LED Bulb*

131.    As evident from the comparisons of the two wavelength measurements, the color enhancement filter (e.g. amber glass) layer filters wavelength outside the second range (e.g. filters wavelengths of 400nm-620nm and 650nm-740nm). The second wavelength measure range is narrower than the first wavelength range and is centered on the selected peak wavelength of approximately 630nm.

132.    Additionally, Defendant has been and/or currently is an active inducer of infringement of the '433 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '43 Patent under 35 U.S.C. § 271(c).

133.    Indeed, Defendant has been and/or currently is intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '433 Patent while being on notice of (or willfully blind to) the '433 Patent. For instance, Defendant has supplied and continues to supply the '433 Accused Products to customers (e.g., end users and/or distributors of the '433 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '433 Patent.

134.    Defendant has been and/or currently is knowingly and intentionally encouraging

and aiding customers to engage in such direct infringement of the '433 Patent. As one example, Defendant promotes, advertises, and instructs customers or potential customers about the '433 Accused Products and uses of the '433 Accused Products. *See, e.g.,* https://us.sengled.com/products/zigbee-edison-st19-e26-4-packs-hub-required.

135.    Defendant knows (and/or has known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '433 Patent. For instance, Defendant knows (and/or has known) of the existence of the '433 Patent or at least should have known of the existence of the '433 Patent but was willfully blind to its existence. Indeed, Defendant has had actual knowledge of the '433 Patent since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. And, as a result of their knowledge of the '433 Patent (and/or as a direct and probable consequence of its willful blindness to this fact), Defendant specifically intends (and/or has intended) that its encouraging and aiding does (and/or would) result in direct infringement of the '433 Patent by Defendant's customers. On information and belief, Defendant specifically intends (and/or has intended) that its actions will (and/or would) result in direct infringement of one or more claims of the '433 Patent and/or subjectively believes (and/or has believed) that its actions will (and/or would) result in infringement of the '433 Patent but has taken (and/or took) deliberate actions to avoid learning of those facts.

136.    Additionally, Defendant has been and/or currently is contributorily infringing one or more claims of the '433 Patent by offering for sale, selling, and/or importing one or more components in connection with the '433 Accused Products that contribute to the direct infringement of the '433 Patent by customers of the '433 Accused Products. In particular, as set forth above, Defendant has had actual knowledge of the '433 Patent or are willfully blind to its existence since at least as early as September 13, 2022, when Defendant received Plaintiff's Notice Letter. Further, Defendant offers for sale, sells, and/or imports one or more components in

connection with the '433 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendant knows (or should know) that such component(s) are especially made or especially adapted for use in infringement of the '433 Patent. Defendant has supplied (and/or continues to supply) the '433 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '433 Patent by using the '433 Accused Products in their intended manner (e.g., pursuant to instructions provided by Defendant).

137.    At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '433 Patent was and continues to be willful and deliberate, thereby entitling Plaintiff to enhanced damages.

138.    Additional allegations regarding Defendant's knowledge of the '433 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

139.    Defendant's infringement of the '433 Patent is exceptional and entitles Plaintiff to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

140.    Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '433 Patent.

141.    Plaintiff is entitled to recover from Defendant all damages that Plaintiff has sustained as a result of Defendant's infringement of the '433 Patent, including, without limitation, a reasonable royalty.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.    That Judgment be entered that Defendant has infringed at least one or more claims

of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.     An award of damages sufficient to compensate Plaintiff for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful infringement;

C.     That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees;

D.     Costs and expenses in this action;

E.     An award of prejudgment and post-judgment interest; and

F.     Such other and further relief as the Court may deem just and proper.

Date: October 7, 2024

Respectfully submitted,

**PLATT RICHMOND PLLC**

*/s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**COUNSEL FOR PLAINTIFF**
**BX LED LLC**